**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

HANNAH JONES, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

BECKER PROFESSIONAL DEVELOPMENT CORPORATION d/b/a BECKER PROFESSIONAL EDUCATION,

Defendant.

Case No. 6:24-cv-06643

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 3

LEGAL STANDARD ........ 5

ARGUMENT ........ 5

I. PLAINTIFF'S VPPA CLAIM SURVIVES A MOTION TO DISMISS. ........ 5

A. The VPPA Protects the Disclosure of Requesting and Obtaining Educational Videos on Becker's Website. ........ 6

B. Through Becker's Disclosed Information, Plaintiff is Identifiable as having Requested or Obtained Specific Video Materials or Services. ........ 11

II. BECKER'S TOLLING OR ESTOPPEL ARGUMENTS SHOULD BE DENIED. ........ 13

A. Plaintiff's Claim is Brought within the Statute of Limitations. ........ 14

B. Becker's Equitable Tolling and Estoppel Arguments are Premature. ........ 14

C. Plaintiff's Allegations Regarding Becker's Fraudulent Concealment Support Tolling the Statute of Limitations. ........ 15

CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aldana v. Gamestop, Inc.*,
2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) .......... 10, 11

*Alvi v. Aqua at Lakeshore E. LLC*,
2013 WL 3785622 (E.D.N.Y. July 18, 2013) .......... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*Belozerov v. Gannett Co.*,
646 F. Supp. 3d 310 (D. Mass. 2022) .......... 10

*Berryman v. Reading Int'l, Inc.*,
2025 WL 315403 (S.D.N.Y. Jan. 28, 2025) .......... 10

*Citizens United v. Schneiderman*,
882 F.3d 374 (2d Cir. 2018) .......... 5

*Collins v. Pearson Educ., Inc.*,
721 F. Supp. 3d 274 (S.D.N.Y. 2024) .......... 2, 12

*Corcoran v. N.Y. Power Auth.*,
202 F.3d 530 (2d Cir.1999) .......... 16

*Czarnionka v. Epoch Times Ass'n, Inc.*,
2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) .......... 12

*Edwards v. Learfield Commc'ns, LLC*,
697 F. Supp. 3d 1297 (N.D. Fla. 2023) .......... 12

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 11

*El Omari v. Int'l Crim. Police Org.*,
35 F.4th 83 (2d Cir. 2022) .......... 7

*England v. Marriott Int'l, Inc.*,
764 F. Supp. 2d 761 (D. Md. 2011) .......... 15

*Faber v. Metro. Life Ins. Co.*,
648 F.3d 98 (2d Cir. 2011)........................................................................................ 5

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023)........................................................................ 12

*Guerra v. GMAC LLC*,
2009 WL 449153 (E.D. Pa. Feb. 20, 2009) ................................................................ 15

*In re Facebook, Inc., Consumer Priv. UserProfile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................ 10, 11

*In re Hulu Priv. Litig.*,
2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ............................................................ 11

*In Re Shanda Games Ltd. Sec. Litig.*,
2025 WL 365767 (2d Cir. Feb. 3, 2025)..................................................................... 17

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................ 9, 10

*Jancik v. WebMD LLC*,
2025 WL 560705 (N.D. Ga. Feb. 20, 2025) ............................................................... 10

*Lamb v. Forbes Media LLC*,
2023 WL 6318033 (S.D.N.Y. Sept. 28, 2023)............................................................ 12

*Liu Yao-Yi v. Wilmington Tr. Co.*,
301 F. Supp. 3d 403 (W.D.N.Y. 2017) ....................................................................... 17

*Miller v. Potter*,
2007 WL 4615611 (E.D.N.Y. Nov. 29, 2007)............................................................. 15

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)........................................................................................ 8

*Payday Advance Plus, Inc. v. Findwhat.com, Inc.*,
478 F. Supp. 2d 496 (S.D.N.Y. 2007)......................................................................... 15

*Pinaud v. Cnty. of Suffolk*,
52 F.3d 1139 (2d Cir. 1995)........................................................................................ 16

*Rancourt v. Meredith Corp.*,
2024 WL 381344 (D. Mass. Feb. 1, 2024) ................................................................. 10

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015) ... 11

*Saint-Amour v. Richmond Org., Inc.*,
388 F. Supp. 3d 277 (S.D.N.Y. 2019) ... 14

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) ... 1, 9

*Universal Church v. Geltzer*,
463 F.3d 218 (2d Cir. 2006) ... 7

*Veltri v. Bldg. Serv. 32B–J Pension Fund*,
393 F.3d 318 (2d Cir.2004) ... 17

*Williams v. MTA Bus Co.*,
44 F.4th 115 (2d Cir. 2022) ... 7

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ... 12

**Statutes**

18 U.S.C. § 2710 ... *passim*

**Other Authorities**

S. Rep. 100-599 (1988) ... 9

## INTRODUCTION

Plaintiff Hannah Jones brought her class action complaint against Defendant Becker Professional Development Corporation d/b/a Becker Professional Education ("Becker" or "Defendant") for its systematic and continuous violation of consumers' privacy rights as established by the Video Privacy Protection Act ("VPPA"). Unbeknownst to the consumers who trusted Becker to provide continuing professional education courses through the online videos maintained on Defendant's website, available at www.becker.com (the "Website"), Becker surreptitiously installed unauthorized tracking technologies, specifically the Meta Pixel. Becker's use of the Meta Pixel disclosed its consumers' personally identifiable information, including their Facebook IDs together with the video materials or services those consumers requested or obtained ("PII") without their informed written consent.

The continuing professional education videos that Becker hosts on its Website are squarely within the type of video materials that the VPPA is intended to protect against unauthorized disclosure. The VPPA prohibits video tape service providers, like Becker, from knowingly disclosing "information which identifies a person as having requested or obtained specific video materials or services." *See* 18 U.S.C § 2710(a)(3). Critically, the VPPA does not include an exception for educational videos. The plain text of the VPPA, legislative history, and caselaw in the Second Circuit supports Plaintiff's argument that the VPPA is intended to protect educational video materials. *See Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 547 (2d Cir. 2024) (noting that the definition of "video tape service provider" includes expansive language). Becker's argument to the contrary is ultimately unavailing and should be denied.

Becker also attempts to avoid judicial scrutiny by almost exclusively relying on out-of-circuit cases to argue that an ordinary person could not identify the PII it discloses to third parties.

*See* Defendant's Memorandum in Support of Motion to Dismiss ("MTD"), ECF No. 17 at 14-17. In doing so, Becker ignores district court decisions in the Second Circuit that have routinely held that in situations—such as this one—where defendants disclose a Facebook ID with the names of the videos requested or obtained in the URL, such disclosure would permit an ordinary person to identify the PII at issue. *See, e.g.*, *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 287 (S.D.N.Y. 2024) ("Courts applying the ordinary-person test developed by the First Circuit have consistently held that a Facebook ID readily permits an ordinary person to identify the particular user accessing or requesting a specific video."); *see also* ¶¶ 9, 45 & 56-7.[1].

Finally, Becker does not dispute that Plaintiff's VPPA claim is brought within the two-year statute of limitations. *See* MTD at 17-25; *see also* ¶ 72 (alleging Becker disclosed Plaintiff's PII as recently as January 2024). Instead, Becker argues that it should not be estopped from arguing that the two-year statute of limitations should be applied to the absent class members. Becker's estoppel arguments are premature at the pleading stage. The scope of the class, including the application of the statute of limitations, are appropriately determined at class certification and not on a 12(b)(6) motion which examines the sufficiency of Plaintiff's claims. Even were the Court to make such a determination prior to class certification and without the benefit of discovery, Plaintiff's allegations are sufficient to establish that Becker's exclusive knowledge that the Meta Pixel was incorporated on its Website and its fraudulent concealment of its disclosure of its consumers' PII should toll the statute of limitations for the purported class members.

The Court should deny Becker's motion to dismiss in its entirety.

---

[1] All paragraph citations are to Plaintiff's complaint ("Complaint"). *See* ECF No. 1.

## BACKGROUND

Defendant Becker provides online courses, including CMA (Certified Management Account) Exam Review, CPA (Certified Public Accountant) Exam Review, and CPE (Continued Professional Education) materials for students. ¶ 3. Becker markets and sells business professionals access to its digital library on its Website so that they may view prerecorded video materials to prepare for the CMA or CPA Exam and to fulfill their CPE requirements. *Id.* Becker's online courses are available through prerecorded videos. ¶ 32. To register for Becker's online courses, consumers create a profile and account on Defendant's Website. ¶ 30. In the process of subscribing to Becker's Website, consumers provide their personal information including, but not limited, to their name, email address, phone, address or postal code, and payment method. ¶ 31.

Defendant secretly installed and configured the Meta Pixel into its Website, providing no indication to subscribers that their PII would be disclosed to unauthorized third parties such as Facebook. ¶ 6 & 81. Becker configured the Meta Pixel to transmit PageView data and other events to Facebook, including the descriptive Uniform Resource Locators ("URL") dedicated to Becker's videos with the titles of those videos in the URL. ¶ 59. The information Becker disclosed to Facebook via the Meta Pixel includes the Facebook ID ("FID" or "Facebook ID") of the subscriber and the title of the prerecorded video that they requested or obtained on its Website. ¶ 7. An FID is a unique sequence of numbers linked to a specific Facebook profile. A Facebook profile, in turn, identifies by name the person to whom the profile belongs and contains other personally identifying information about the person. *Id.* Entering "Facebook.com/[FID]" into a web browser returns the Facebook profile of the person to whom the FID corresponds. *Id.* Becker is not sharing anonymized, non-personally identifiable data with third parties like Facebook. ¶ 60.

Plaintiff Jones subscribed to Becker's services and purchased a CPA Exam Review package from Becker on May 20, 2020 and a CPE Compliance Tracker on January 19, 2024. ¶ 70-71. Plaintiff Jones watched the purchased pre-recorded CPA Exam Review videos on Becker's Website from May 2020 until September 2022 and CPE videos in January 2024. ¶ 72. When Plaintiff Jones purchased and watched videos on Becker's Website, Defendant disclosed the videos' titles that she watched to Facebook together with her name, email, phone number, and Facebook ID. ¶ 75. Plaintiff Jones used her Becker digital subscription to view videos through Becker's Website on her personal devices, such as her laptops and phone, while logged into her Facebook account. ¶ 73. Her Facebook account is in her real name and displays her personally identifiable information, such as her name and photos, to the general public. ¶ 74.

Plaintiff Jones never consented, agreed, authorized, or otherwise permitted Defendant to disclose her PII to third parties and has never been provided any written notice that Defendant disclosed her PII. ¶ 76. Plaintiff and class members are not informed about Becker's collection and disclosure of their PII—as it is automatic and invisible—and they cannot take proactive measures to defend themselves against Becker's use of their data for financial gain. ¶ 11. Plaintiff did not discover that Defendant disclosed her PII to unauthorized third parties until October 2024, after contacting undersigned counsel and discussing potential claims against Defendant. ¶ 85.

Defendant's privacy policy describes "the types of personal information we may collect about you, how we collect, use, process and disclose your personal information, and the choices you can make about how we collect, use, process and disclose your personal information." ¶ 38. The circumstances under which Defendant states that it may disclose a subscriber's personal information do not include the disclosure of PII to third parties like Facebook. ¶ 39. Defendant also failed to obtain written consent to collect and disclose PII "in a form distinct and separate

from any form setting forth other legal or financial obligations of the consumer," as the VPPA requires. ¶ 37.

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the movant has the burden to establish that, "draw[ing] all reasonable inferences in plaintiffs' favor[ and] assuming all well-pleaded factual allegations to be true," the complaint does not contain sufficient allegations "plausibly giv[ing] rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (cleaned up). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To state a plausible claim, plaintiff must "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556).

## ARGUMENT

### I. PLAINTIFF'S VPPA CLAIM SURVIVES A MOTION TO DISMISS.

Under the VPPA, "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person." 18 U.S.C. § 2710(b)(1). The VPPA defines "video tape service provider," in relevant part, as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials[.]" *Id.* § 2710(a)(4). "Personally identifiable information" is "information which

identifies a person as having requested or obtained specific video materials or services from a video tape service provider[.]" *Id.* § 2710(a)(3). And "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(1).

Plaintiff pleads each required element to state a claim under the VPPA:

- Becker is a "video tape service provider." ¶¶ 2-3 & 95.
- Becker "knowingly" disclosed Plaintiff's PII through its installation and configuration of the Meta Pixel. ¶¶ 29, 67, 78 & 98.
- The information that Becker disclosed—Plaintiff's Facebook ID and the title of the specific prerecorded video material that she requested or obtained—to third parties through its use of the Meta Pixel amounts to PII. ¶¶ 6-8, 50-53, 59-65 & 98-99.
- Plaintiff—as a user and subscriber of Becker's services—is a "consumer" under the VPPA. ¶¶ 22, 71 & 96.
- And Becker disclosed Plaintiff's PII without obtaining her consent "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer" or at all for that matter. ¶¶ 37 & 100-101 (citing 18 U.S.C. § 2710(b)(2)(B)).

Seemingly recognizing that Plaintiff has sufficiently alleged her VPPA claim, Becker makes only two substantive arguments. First, Becker argues that educational videos are not encompassed by the VPPA's protections. Second, Becker claims that an ordinary person could not identify PII from its alleged disclosed information. Both arguments fail.

### A. The VPPA Protects the Disclosure of Requesting and Obtaining Educational Videos on Becker's Website.

Defendant first posits a theory that educational videos are outside the scope of the VPPA. *See* MTD at 12-14. However, the VPPA is clear that a "video tape service provider" is "any person,

engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery ***of prerecorded video cassette tapes or similar audio visual materials***[.]" 18 U.S.C. § 2710(a)(4) (emphasis added). Nowhere in the text does the statute make an exception for educational videos or any equivalent video materials. Thus, the relevant inquiry here turns on the meaning and application of "similar audio visual materials."

In answering that question, the Court must begin with the statute's plain language which here is straightforward and unambiguous. *See, e.g.*, *Universal Church v. Geltzer*, 463 F.3d 218, 223 (2d Cir. 2006). In this case, "similar" in the statute refers to "prerecorded video cassette tapes." 18 U.S.C. § 2710(a)(4). A cassette is a mere container for audiovisual materials. *See* Cassette, Cambridge Dictionary (last accessed Feb. 26, 2025) (defining cassette as "a flat rectangular device containing a very long strip of magnetic material that is used to record sound and/or pictures, or a machine that uses such devices."). Video cassettes can record a wide variety of content—including educational videos—and the VPPA says nothing to narrow the meaning of that term, aside from requiring that the videos be "prerecorded." 18 U.S.C. § 2710(a)(4). Accordingly, the plain text of the VPPA informs that Becker—a company engaged in the business of prerecorded educational videos— is a video type service provider.

Additionally, if the Court were to find that educational videos were excluded from the meaning of "similar audio visual materials" that clause in the statute would be superfluous if not completely void. It is a well-established canon of statutory construction that a statute should not be construed in a manner that renders a word or clause superfluous and inoperative. *See, e.g.*, *El Omari v. Int'l Crim. Police Org.*, 35 F.4th 83, 90 (2d Cir. 2022) (defining canon); *Williams v. MTA Bus Co.*, 44 F.4th 115, 128 (2d Cir. 2022) ("We start with the presumption that Congress intended the words in a statute to carry weight."). Had the legislature intended the VPPA to cover only

prerecorded video cassette tapes, the legislature could have written the statute in such a manner. But that is not how the VPPA was written. Instead, the VPPA includes the language "or similar audio visual materials," and that clause must be given meaning and effect.

Notwithstanding the plain text in the VPPA, Defendant relies on its legislative history. The Court need not consider the legislative history and the purpose of the VPPA because the text of the statute is clear. *See, e.g.*, *Novak v. Kasaks*, 216 F.3d 300, 310 (2d Cir. 2000). But should the Court examine the legislative record, it also supports Plaintiff's claim. Defendant relies on the following quotes from the legislative record: "movies we view in the privacy of our home," "movies taken out of a video store," "people ought to be able to . . . watch films without the whole world knowing." MTD at 12-13 (citing Video and Library Privacy Protection Act of 1988: Joint Hearing on H.R. 4947 and S. 2361 Before the Subcomm. on Cts., C.L., & the Admin. of Just. of the H. Comm. on the Judiciary and the Subcomm. on Tech. & the Law of the S. Comm. on the Judiciary, 100th Cong. 54 (1998) ("1988 VPPA Joint Hearing")). In each of these sections of the record, the legislature emphasized the importance of privacy in the context of watching films and videos. *Id.* Here, Plaintiff's decision to watch educational videos without having that information disclosed without her knowledge or consent is no different than what the legislature intended in passing a statute with the purpose of protecting individuals from the disclosure of their PII. *See, e.g.*, ¶¶ 60, 72-79 & 107.

To the extent the Court examines the legislative history, Plaintiff directs the Court to the testimony of Richard A. Barton, the Senior Vice President of the Direct Marketing Association responsible for government relations. *See* 1988 VPPA Joint Hearing at 92-100. Mr. Barton opposed the VPPA because it "adversely affects the direct marketer's most important business asset: the mailing list." *Id.* at 92. Through his testimony, Mr. Barton explained:

> Video tapes are emerging as a major element of the marketing business. The new traditional video tape version of movies are being sold through the mail ***as well as educational and instructional material***. Everything from exercising to cooking to gardening to entertainment is finding its way onto videotape. A rapidly growing amount of all video tapes in the United States are sold directly to consumers through the mail.

*Id.* at 94 (emphasis added). Mr. Barton's testimony demonstrates that he recognized the growing amount of content being included on video tapes. Notably, recognizing the same educational content at issue here. *See also* S. Rep. 100-599, at 14 (1988) (explaining the VPPA would apply to "golf videos" the same as it would "Star Trek videos."). Ultimately, Becker's argument that educational videos should be excluded from the purview of the VPPA attempts to create a distinction—between educational videos and all other videos—where none exists.[2]

Further, Becker's argument also contradicts the Second Circuit's recent analysis of a related defined term in the VPPA. In *Salazar*, the Second Circuit explained that "Congress deployed similarly ***broad*** language in the "video tape service provider" definition." 118 F.4th at 547 (emphasis added). There, the Court examined how the definition of "video tape service provider" requires the provider to deal in "audio visual materials," and "[t]his meaningful variation shows that Congress knew to include an audiovisual limitation in the VPPA when it wanted one to apply." *Id.*; *see also In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) ("Congress's use of the phrase "similar audiovisual materials" indicates that the definition is medium-neutral; the defendant must be in the business of delivering video content,

[2] Creating the distinction that Defendant seeks would cause the VPPA to be unworkable. How would a company or a court be expected to determine whether a prerecorded video cassette tape or similar audio visual material is purely educational or not? Consider documentaries as an example, would documentaries that include educational content be excluded from the purview of the VPPA? Or a children's video that teaches how to count or the alphabet?

but that content need not be in a particular format."). Thus, the limit on the VPPA is prerecorded "audio visual materials," not non-educational content.[3]

Finally, Becker ignores relevant caselaw evaluating the scope of the defined term "video tape service provider." For example, in *Rancourt v. Meredith Corp.*, the court held that "similar audio visual materials" includes recipe videos embedded in an application. *See* 2024 WL 381344, at *14 (D. Mass. Feb. 1, 2024) (explaining "a content-specific limitation would not only be impractical in application, but has no basis in the text"). And in *Belozerov v. Gannett Co.*, the court held that a news provider was a "video tape service provider" within the meaning of the VPPA. *See* 646 F. Supp. 3d 310, 313–14 (D. Mass. 2022); *see also Berryman v. Reading Int'l, Inc.*, 2025 WL 315403, at *3 (S.D.N.Y. Jan. 28, 2025) (concluding delivery of audiovisual materials on a website, even if only a "peripheral" feature is subject to the VPPA); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d at 1222 (finding provider of software for internet video content delivery was a video tape service provider); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 798-99 (N.D. Cal. 2019) (same for social media company).[4]

In contrast, the cases Becker relies on are distinguishable and ultimately support Plaintiff's claim. *See* MTD at 13-14. In *Aldana v. Gamestop, Inc.*, the court analyzed the text of the VPPA, the legislative history, and the content of the video games that plaintiffs purchased from defendant. *See* 2024 WL 708589, at *4-6 (S.D.N.Y. Feb. 21, 2024), *motion to certify appeal denied*, 2024 WL 3104345 (S.D.N.Y. June 24, 2024). After doing so, the court concluded that defendant was a

[3] Contrary to Defendant's argument that Plaintiff's position has no limit on the type of video that qualifies under the VPPA, the statute is clear that the limiting factor is whether the similar audio visual material in the form of a video or movie is prerecorded. *Compare* MTD at 13-14, *with* 18 U.S.C. § 2710(a)(4).

[4] *See also Jancik v. WebMD LLC*, 2025 WL 560705, at *10 (N.D. Ga. Feb. 20, 2025) (granting class certification in VPPA case concerning website that hosted medical videos).

"video tape service provider" under the VPPA because it "sold video games that include cut scenes." *Id.* at *6.[5] Just as prerecorded content in video games are "audio visual material" so too are Becker's educational videos. This conclusion is based on the plain text of the VPPA, supported by the legislative history, and in accord with case law. Thus, Becker is a "video tape service provider" and Defendant's Motion should be denied.[6]

### B. Through Becker's Disclosed Information, Plaintiff is Identifiable as having Requested or Obtained Specific Video Materials or Services.

Becker's next argument is that an ordinary person could not identify PII from the information that it disclosed to Facebook. *See* MTD at 14-17. This argument falls flat. The VPPA defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider[.]" 18 U.S.C. § 2710(a)(3). Any ordinary person—armed with only an internet connected web browser and the rudimentary ability to type—can use the Facebook ID to identify a person. *See, e.g.*, *In re Hulu Priv. Litig.*, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014) ("The Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user. That it is a string of numbers and letters does not alter the conclusion.").

While neither the text of the VPPA nor the Second Circuit requires an ordinary person to be able to identify PII, the Third and Ninth Circuits have imposed such a requirement. *See* MTD

[5] Defendant's remaining cases are inapposite. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (analyzing meaning of PII and finding ordinary person could not identify video watching based on information disclosed to Adobe); *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 184 (S.D.N.Y. 2015) (finding hashed identifiers sent to Adobe insufficient to qualify as PII & comparing to a Facebook ID).

[6] Defendant's remaining argument that "[t]here is no suggestion that any disclosure has been or would be used to attack anyone's character" is undeveloped and unsupported. MTD at 14. Defendant's argument reads a new element into the statute requiring "attack of one's character," where such an element does not exist.

at 15 (collecting cases). Although the Second Circuit has not spoken on this point, where district courts in the Circuit have applied the "ordinary person" test, those courts have found almost identical allegations as to Plaintiff's here sufficient to meet that test. *See, e.g.*, *Collins*, 721 F. Supp. 3d at 287. In contrast, the First Circuit uses a different test— whether the actual recipient of the disclosure would be able to use that information to identify the consumer and the specific video the consumer viewed. *See Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016).

Becker's argument is foreclosed by decisions that are squarely on point. Courts in the Second Circuit routinely agree that "disclosure of a "Facebook ID would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Collins*, 721 F. Supp. 3d at 287 (citing *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 159 (S.D.N.Y. 2023) ("Courts have uniformly held Facebook IDs to constitute PII under the VPPA, particularly where—as here—the plaintiff alleges that her Facebook ID was disclosed alongside the viewed video's URL and name."); *Lamb v. Forbes Media LLC*, 2023 WL 6318033, at *10 (S.D.N.Y. Sept. 28, 2023) (disclosure of Facebook ID constituted PII within the meaning of VPPA); *Czarnionka v. Epoch Times Ass'n, Inc.*, 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) ("The FID itself represents a particular individual.")).[7]

Notwithstanding the clear caselaw, Becker argues that Plaintiff's sample of screenshots demonstrating how the Meta Pixel functions are too confusing for a "non-expert." MTD at 15-17. Plaintiff's illustrative screenshots and their accompanying red boxes are used to direct the Court

[7] Courts nationwide have similarly concluded that a Facebook ID constitutes PII under VPPA. *Collins*, 721 F. Supp. 3d at 287 (collecting cases); *but see Edwards v. Learfield Commc'ns, LLC*, 697 F. Supp. 3d 1297, 1308 (N.D. Fla. 2023) (finding plaintiff's less-detailed allegations insufficient).

and Defendant to the relevant PII disclosed by Becker to Facebook including, but not limited to, the full-text URL with the title of the course, "AddToCart" event of course for purchase, and the subscribers' Facebook ID. ¶¶ 61-67 (including screenshots). The red boxes serve the same purpose as a highlighter identifying the key parts of a document to allow an ordinary person to know where to look to see that PII was disclosed. With their assistance an ordinary person, without specialized reverse engineering, knowledge, or tools, can decipher the information in Plaintiff's Complaint.

Ultimately, Becker does not dispute Plaintiff's allegation that it disclosed Plaintiff's and class member's PII including, but not limited to, a subscriber's Facebook ID and the title of the specific prerecorded video material that each of its subscribers requested or purchased on its Website. ¶ 7. Plaintiff also explains that entering "Facebook.com/[FID]" into a web browser returns the Facebook profile of the person to whom the FID corresponds. *Id.* Further, Plaintiff alleges that Becker configured "Advanced Matching" for its Meta Pixel, which tracked and disclosed to Facebook its subscribers' additional personal identifiers entered on forms on the Website, including the subscriber's name, email, and phone number. ¶ 63. Again, Becker does not address the relevance of its use of advanced matching. Accordingly, Plaintiff has sufficiently alleged that her PII was disclosed.

## II. BECKER'S TOLLING OR ESTOPPEL ARGUMENTS SHOULD BE DENIED.

For the reasons explained below, Becker's tolling and estoppel arguments fail for three reasons. First, Plaintiff's claim is inside the statute of limitations because she last watched prerecorded content on Becker's Website in January 2024. Second, Becker's argument concerning absent class members is premature on a motion to dismiss. Third, should the Court consider whether absent class members' claims are tolled, Plaintiff's allegations explaining how Becker hid its use of tracking technologies to collect and disclose PII are sufficient.

**A. Plaintiff's Claim is Brought within the Statute of Limitations.**

Becker's argument regarding the application of equitable tolling or estoppel is inapplicable to Plaintiff's VPPA claim, which falls within the two-year statute of limitations. *See* MTD at 17-25. The VPPA provides that "[n]o action may be brought under this subsection unless such action is begun within 2 years from the date of the act complained of or the date of discovery." 18 U.S.C § 2710(c)(3). But Becker does not dispute that Plaintiff's claim is within the two-year statute of limitations. Rather, Plaintiff's PII was disclosed by Becker to third parties in violation of the VPPA as recently as January 2024 when she watched pre-recorded CPA Exam Review videos on its Website. ¶¶ 70-72. Plaintiff filed her Complaint on November 1, 2024 less than one month after discovering the violation (in October 2024) and less than a year after her PII was disclosed in January 2024. ¶¶ 72 & 85. As such, Plaintiff's VPPA claim falls within the statute of limitations.

**B. Becker's Equitable Tolling and Estoppel Arguments are Premature.**

Becker contends that it should not be estopped from arguing that the VPPA's statute of limitations should be applied to the purported class members. *See* MTD at 17-25. But Becker's arguments as to the absent class members, are inappropriate at the pleading stage where only the sufficiency of Plaintiff's claims are at issue. Statute of limitations defenses for absent class members are appropriately brought at the class certification stage, after the parties have had the benefit of discovery, rather than at the motion to dismiss stage. *See, e.g.*, *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 n.10 (S.D.N.Y. 2019) ("Defendants do not argue that Plaintiffs' individual claims are barred by the Copyright Act - only that the claims of absent class members must be limited to three years. This statute of limitations argument is more properly addressed during class certification rather than at this motion to dismiss stage. Therefore, the Court declines to address this argument here."); *Townsend v. Haza Foods, LLC*, N2024 WL 4592282, at *9 (W.D.N.Y. Oct. 28, 2024) (explaining that "[d]efendants' arguments in support of dismissal of

the class allegations—like their standing arguments—implicate issues that should be decided on a class certification motion" not a motion to dismiss"); *Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 507 n.5 (S.D.N.Y. 2007) (explaining that "the limitations period and any arguments for its tolling with respect to other putative class members cannot be considered at this stage.").[8]

Becker asserts, in a footnote, that equitable tolling may be determined on a motion to dismiss because it is alleged in the Complaint. *See* MTD at 18, fn. 4. But the cases it cites do not support this proposition. In both cases, the equitable tolling allegations applied only to the plaintiff, not the purported class members. *See Alvi v. Aqua at Lakeshore E. LLC*, 2013 WL 3785622, at *4 (E.D.N.Y. July 18, 2013) (analyzing equitable tolling argument where plaintiff's claims were untimely); *see also Miller v. Potter*, 2007 WL 4615611, at *4 (E.D.N.Y. Nov. 29, 2007) (finding that plaintiff's claims were untimely). Here, unlike the cases Becker relies on, Plaintiff brought her claims within the statute of limitations. ¶ 72. Therefore, determining equitable tolling on a motion to dismiss is inappropriate.

### C. Plaintiff's Allegations Regarding Becker's Fraudulent Concealment Support Tolling the Statute of Limitations.[9]

Nevertheless, should the Court evaluate whether equitable tolling or estoppel applies to absent class members' claims, Becker's use of invisible tracking technologies ensured that class

[8] *See also England v. Marriott Int'l, Inc.*, 764 F. Supp. 2d 761, 772 n.1 (D. Md. 2011) ("The Court concludes that a motion to dismiss is not an appropriate time to consider the impact of a statute of limitations defense on absent class members. That is especially so when no class certification has yet occurred.") (cleaned up); *Guerra v. GMAC LLC*, 2009 WL 449153, at *6 (E.D. Pa. Feb. 20, 2009) (same).

[9] To be clear, Plaintiff is not arguing that on a class certification motion Becker should be estopped from arguing that the statute of limitation applies. *See* MTD at 23-24. Rather, though inapplicable for purposes of Becker's 12(b)(6) motion, Plaintiff's allegations establish that the statute of limitations should be tolled for the purported class members when the time comes to make that determination.

members would not be able to discover their claims. When a "defendant fraudulently conceals the wrong, the statute of limitations does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action." *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) (cleaned up). A statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to its wrongdoing; (2) the concealment prevented discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled. *See, e.g.*, *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir.1999).

Here, Plaintiff's allegations are sufficient to establish that the statute of limitations for class members should be tolled. Consumers are not and could not have been made aware of Becker's disclosure of their PII because Becker's use of the Meta Pixel is "automatic and invisible," it runs in the background of the Website and the consumer is not provided any notification that their PII is shared. ¶¶ 11, 34, 36 & 81. Nor does Becker reveal in its privacy policy, or anywhere else on its Website, that it uses the Meta Pixel to disclose its consumers' PII. ¶¶ 38-40. The surreptitious nature of the Meta Pixel and Becker's choice to abstain from revealing its disclosure of PII prevented class members from discovering Becker's violation of the VPPA within the statute of limitations. ¶¶ 77 & 81-83. Finally, class members could not with due diligence have discovered the full scope of Defendant's conduct because the incorporation of the Meta Pixel is technical and

there were no disclosures or other indications that would inform a reasonable consumer that Defendant was disclosing and allowing Facebook to intercept subscribers' PII. ¶ 83.[10]

Plaintiff's allegations establish that Becker's fraudulent concealment warrants the tolling of the absent class members' claims. Notably, Plaintiff's allegations are pled with sufficient particularity to satisfy Rule 9(b) and demonstrate that Becker's fraudulent concealment of its conduct should toll the statute of limitations for the absent class members' VPPA claims at this stage of the litigation. *See Liu Yao-Yi v. Wilmington Tr. Co.*, 301 F. Supp. 3d 403, 417–18 (W.D.N.Y. 2017) (denying dismissal of plaintiff's complaint on statute of limitations grounds and holding that "[t]he Court need not resolve the statute of limitations issue at the motion to dismiss stage of this proceeding because Plaintiffs have sufficiently raised potential defenses to the application of the statute of limitations that cannot be resolved without discovery.").

## CONCLUSION

Plaintiff respectfully requests that this Court deny Becker's motion to dismiss, grant leave to amend any pleading deficiencies identified, and award other relief as equity and justice require.[11]

---

[10] Though Plaintiff's allegations regarding Becker's conduct establish its active concealment, fraudulent concealment is not essential to equitable tolling. *See Veltri v. Bldg. Serv. 32B–J Pension Fund*, 393 F.3d 318, 323 (2d Cir.2004) ("The relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action.") (internal citations omitted).

[11] Under Rule 15, "leave to amend a complaint should be 'freely given when justice so requires.'" *In Re Shanda Games Ltd. Sec. Litig.*, 2025 WL 365767, at *19 (2d Cir. Feb. 3, 2025). While Plaintiff contends that sufficient facts are pled to support her VPPA cause of action and associated damages, should the Court be persuaded to dismiss the claim, Plaintiff respectfully requests leave to file a First Amended Class Action Complaint, after guidance from the Court. Plaintiff submits that this is a reasonable request, particularly where courts nationwide analyzing similar pleadings have done so with varying levels of specificity in the pleadings.

Dated: February 27, 2025

Respectfully submitted,

*s/: David S. Almeida*
David S. Almeida*
New York Bar No. 3056520
Matthew J. Langley*
New York Bar No. 4831749
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Tel: (708) 437-6476
david@almeidalawgroup.com
matt@almeidalawgroup.com

**WEITZ & LUXENBERG**
James Bilsborrow
New York Bar No. 4702064
700 Broadway
New York, New York 10003
Tel: (212) 558-5500
jbilsborrow@weitzlux.com

* *Pro hac vice*

***Counsel for Plaintiff & the Putative Class***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 27, 2025, the foregoing was filed electronically using the Court's CM/ECF system which will serve a copy upon all parties of record.

*/s/ David S. Almeida*