**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HANNAH JONES, *individually and on behalf of all other similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>BECKER PROFESSIONAL DEVELOPMENT CORPORATION D/B/A BECKER PROFESSIONAL EDUCATION,<br><br>Defendant. | Case No. 6:24-cv-6643 |

**<u>DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

# Table of Contents

Table of Authorities ........................................................................................................... ii

I. Becker's professional education courses not within the VPPA's intended scope.................. 1

II. An ordinary person could not decipher PII from the muddle of computer code that is purportedly transmitted by the Pixel.......................................................................................... 4

III. Plaintiff's allegations fail to establish the requirements to contravene the VPPA's statute of limitations. ........................................................................................................................ 6

CONCLUSION.......................................................................................................................... 9

# Table of Authorities

**Cases**

*A.Q.C. ex rel. Castillo v. United States*,
656 F.3d 135 (2d Cir. 2011) ... 7

*Abercrombie v. Andrew Coll.*, 4
38 F. Supp. 2d 243 (S.D.N.Y. 2006) ... 7

*Aldana v. GameStop, Inc.*,
No. 22-CV-7063, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024 ... 2, 3

*Alvi v. Aqua at Lakeshore East LLC*,
No. 12 CV 2662, 2013 WL 3785622 (E.D.N.Y. July 18, 2013) ... 7

*Baldayaque v. United States*,
338 F.3d 145 (2d Cir. 2003) ... 8

*Contrera v. Langer*,
278 F. Supp. 3d 702 (S.D.N.Y. 2017) ... 7

*De Sole v. Knoedler Gallery, LLC*,
974 F. Supp. 2d 274 (S.D.N.Y. 2013) ... 9

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ... 5

*Fire & Police Ass'n of Colorado v. Bank of Montreal*,
368 F. Supp. 3d 681 (S.D.N.Y. 2019) ... 8, 9

*Futterman v. Wash. Mut. Bank, FA*,
No. 1:10-CV-01002, 2010 WL 5067650 (N.D.N.Y. Dec. 6, 2010) ... 9

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*,
620 F. Supp. 2d 499 (S.D.N.Y. 2009) ... 8, 9

*In re Hulu Priv. Litig.*,
No. 11-CV-03764, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ... 3

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ... 2, 5, 6, 7

*In re Vizio, Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 124 (C.D. Cal. 2017) ... 3

*Lopez v. Nassau Cnty. Sheriffs Dep't*,
No. 17-CV-3722, 2018 WL 3321430 (E.D.N.Y. July 5, 2018) ... 8

*MCI Telecomm. Corp. v. AT&T Co.*,
512 U.S. 218 (1994) ... 2

*Miller v. Potter*,
No. 07-CV-1767, 2007 WL 4615611 (E.D.N.Y. Nov. 29, 2007) .......... 7

*Pace v. DiGuglielmo*,
544 U.S. 408, 418 (2005) .......... 7, 8

*Payday Advance Plus, Inc. v. Findwhat.com, Inc.*,
478 F. Supp. 2d 496 (S.D.N.Y. 2007) .......... 6

*Pearl v. City of Long Beach*,
296 F.3d 76 (2d Cir. 2002) .......... 8

*Reynolds-Sitzer v. EISAI, Inc.*,
586 F. Supp. 3d 123 (N.D.N.Y. 2022) .......... 9

*Saint-Armour v. Richmond Org., Inc.*,
388 F. Supp. 3d 277 (S.D.N.Y. 2019) .......... 6

*Schneider v. Colgate-Palmolive Co.*,
677 F. Supp. 3d 91 (N.D.N.Y. 2023) .......... 9

*State v. Mixton*,
478 P.3d 1227 (Ariz. 2021) .......... 8

*Statler v. Dell, Inc.*,
841 F. Supp. 2d 642 (E.D.N.Y. 2012) .......... 9

*Townsend v. Haza Foods, LLC*
No. 6-24-CV-06180, 2024 WL 4592282 (W.D.N.Y. Oct. 28, 2024) .......... 6

*Universal Church v. Geltzer*,
463 F.3d 218 (2d Cir. 2006) .......... 1

*Valverde v. Stinson*,
224 F.3d 129 (2d Cir. 2000) .......... 8

*Wilson v. Triller, Inc.*,
598 F. Supp. 3d 82 (S.D.N.Y. 2022) .......... 5

**Statutes**

18 U.S.C. § 2710(a)(4) .......... 1

Plaintiff's opposition to Becker's Motion to Dismiss fails to demonstrate she has stated a claim under the VPPA. First, the VPPA's language is ambiguous and, therefore, the legislative history must be considered. That history confirms the VPPA was not intended to apply to professional education courses like those offered by Becker. Next, Plaintiff misses the mark with regard to the disclosure of PII. She argues extensively that a Facebook ID constitutes PII, but fails to address Becker's arguments about the confounding format of the alleged disclosure and fails to explain how an ordinary person would know what the information she claims is disclosed by the Pixel actually means. Finally, Plaintiff's tolling and estoppel allegations are properly evaluated here because they are affirmatively raised in the Complaint. As explained in Becker's opening memorandum and below, the allegations fail to meet the standard required for such a drastic remedy.

For these reasons, Becker's Motion to Dismiss should be sustained.

## I. Becker's professional education courses not within the VPPA's intended scope.

The VPPA applies only to those "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio-visual materials." 18 U.S.C. § 2710(a)(4). Plaintiff's opposition relies on the flawed premise that this language is "straightforward and ambiguous." Opp. at 12. For this, she cites *Universal Church v. Geltzer*, 463 F.3d 218, 223 (2d Cir. 2006), a case which did not involve the VPPA but rather was an appeal from a Chapter 7 adversary proceeding in bankruptcy court. There, the Second Circuit recited the unremarkable principle that "[s]tatutory interpretation always begins with the plain language of the statute, assuming the statute is unambiguous". *Id*. The Second Circuit ultimately found certain bankruptcy code provisions regarding charitable contributions to be ambiguous and proceeded to review the legislative history of the provisions, consistent with Becker's arguments. *Id*. at 224-225.

The VPPA is ambiguous with regard to the meaning of "similar audiovisual materials" – Becker submits that its educational courses (which are not always prerecorded) are not "similar" to prerecorded video cassette tapes identified in the statute. That is the crux of the parties' disagreement. *See Aldana v. GameStop, Inc.*, No. 22-CV-7063, 2024 WL 708589, *4 (S.D.N.Y. Feb. 21, 2024) ("The parties' disagreement about the meaning of 'similar' indicates that the statutory language of the VPPA is ambiguous in this context."). Thus, the VPPA's legislative history must be examined. *Id.* at *3.

The genesis of the VPPA was the disclosure of Judge Bork's film rental history by a local video store.[1] This context is crucial and the VPPA was enacted in the age of Blockbuster when movies were on movie cassette tapes and prior to the dawn of the internet. *See MCI Telecomm. Corp. v. AT&T Co.*, 512 U.S. 218, 228 (1994) ("The 'most relevant time for determining a statutory term's meaning' is the time when the law was enacted"). The scope of the VPPA was intended to be "quite narrow", *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 284-85 (3d Cir. 2016), and its focus was preventing the unauthorized disclosure of individuals' film rental history. In other words, it outlawed video tape service providers, such as Blockbuster, from unilaterally disclosing its customers' purchases. Plaintiff nevertheless seeks to shoehorn Becker's educational courses into the confines of a statute that was not intended to stretch so far.

Contrary to the VPPA's language and legislative history, Plaintiff posits that the scope of the VPPA has no bounds or limitation. She ignores the title of the statute itself – "Wrongful disclosure **<u>of video tape rental or sales records</u>**" (emphasis added) – which clearly demonstrates Congress' focus on films, not educational content viewed online. Despite claiming the Court's

---

[1] *See* Andrea Peterson, How Washington's Last Remaining Video Rental Store Changed the Course of Privacy Law, WASHINGTON POST (Apr. 28, 2014), https://www.washingtonpost.com/news/the-switch/wp/2014/04/28/how-washingtons-last-remaining-video-rental-store-changed-the-course-of-privacy-law (last visited March 17, 2025).

inquiry should end at the statute's plain language, Plaintiff conveniently chose to ignore *this* plain language. Had Congress intended the statute to encompass all video content full stop, regardless of content or medium, it would have used such language. But it did not. And where courts have applied the VPPA to modern technologies it has been rooted in the similarity regarding the content of programming offered. *See, e.g., In re Hulu Priv. Litig.*, No. 11-CV-03764, 2012 WL 3282960, at *5-6 (N.D. Cal. Aug. 10, 2012) (classifying Hulu as "video tape service provider" based on finding similarity in the video content it provides "via the Internet or a bricks-and-mortar store."); *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 124 (C.D. Cal. 2017) (concluding Vizio was "video tape service provider" due to agreements it entered with content providers such as Netflix and Hulu for its Smart TVs, and its advertising of Smart TVs with access to "entertainment movies, TV shows, and more"). Becker is certainly not in the same category as Hulu or Netflix, because it does not provide content similar to video tape service providers in that Becker offers professional education video content, not movies similar to the video content offered by brick-and-mortar stores that existed when the VPPA was enacted by Congress. Indeed, the Complaint concedes that Becker does not provide entertainment; rather, it provides "continuing education and test preparation courses". *See* Complaint, ¶¶ 3, 4, 96. *See also Aldana*, 2024 WL 708589, at *4 ("The Senate Report thus indicates that 'similar audio visual material' **refers more narrowly to prerecorded videos that are films or have similar content** rather than the generic world of "audio visual materials that are pre-recorded, full stop") (emphasis added). Plaintiff claims that *Aldana* actually supports her claim but ignores the clear distinction between the video games sold by GameStop for entertainment purposes (which the court concluded fall in the "films or similar content" bucket) and the professional educational courses provided by Becker.

The legislative history of the statute confirms that the VPPA is not all-encompassing of content and medium:

- "The *movies* we view in the privacy of our home … may reveal sensitive, personal information about us and should not be disclosed absent a compelling State interest…." Video and Library Privacy Protection Act of 1988: Joint Hearing on H.R. 4947 and S. 2361 Before the Subcomm. on Cts., C.L., & the Admin. of Just. of the H. Comm. on the Judiciary and the Subcomm. on Tech. & the Law of the S. Comm. on the Judiciary, 100th Cong. 54 (1998) ("1988 VPPA Joint Hearing") (emphasis added).

- **"**[A] person would have to consent to the—to a release of such information as the precise titles of *movies* taken out of a video store." *Id.* at 32 (emphasis added).

- "There's a gut feeling that people ought to be able to read books and watch *films* without the whole world knowing. Books and *films* are the intellectual vitamins that fuel the growth of individual thought." *Id.* at 27.

- **"**The term 'video tape service provider' means any person engaged in the business … of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials, *such as laser disks, open-reel movies, or CDI technology*…." S. Rep. No. 100-599 (1988), at 12 (emphasis added).

Because Becker's educational courses are not films and nor do they "have similar content" to the films Congress intended the VPPA to regulate, Plaintiff's claim fails and the Complaint should be dismissed.

## II. An ordinary person could not decipher PII from the muddle of computer code that is purportedly transmitted by the Pixel.

Even assuming *arguendo* that the VPPA did apply to Becker's educational courses, the information that is allegedly disclosed by the Pixel (as demonstrated by Plaintiff's screenshots) is meaningless to an ordinary person.

Plaintiff asserts Becker's Motion "falls flat" because a Facebook ID can be used to identify a person, citing caselaw to that effect. Opp. at 16-17. Her opposition belabors this point for several pages, but misses the mark of Becker's argument completely. The majority of circuits and courts to address the issue of PII disclosure require that the disclosed information "*readily permit an*

*ordinary person* to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (emphasis added). *See also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (adopting "ordinary person" standard because it "better informs video service providers of their obligations under the VPPA."); *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 91 (S.D.N.Y. 2022) (stating "the majority of the courts to address this issue" have found PII to mean "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior.") (internal citations omitted).

Plaintiff's claim that a Facebook ID—an innocuous set of numbers embedded within lines of computer code—is sufficient under the VPPA skips a step; namely, consideration of *how* that Facebook ID is disclosed to the third-party in the first place. Here, Plaintiff supplied examples of allegedly disclosed information via screenshots throughout the Complaint. Her argument that a Facebook ID constitutes PII erroneously assumes that any ordinary person could look at those jumbled screenshots of computer code and readily identify the Facebook ID and specific video information. Not to mention she fails to explain how an ordinary person would know how or where to access the information from the screenshots in the first place.

Plaintiff claims she provided the red boxes in the screenshots "to direct the Court and Defendant to the relevant PII". Opp. at 12-13. But the fact that she had to do so at all to make the screenshots useful only proves Becker's point: Plaintiff herself does not believe an ordinary person or even this Court could look at the screenshots and discern any form of PII; it is so obfuscated that she was compelled to affirmatively point it out. This is crucial because the ordinary person test does not contemplate that the recipient of information has the aid of counsel or another individual experienced in computer code to identify any PII therein. Requiring aid of a third party to identify and decipher the alleged PII in the first place confirms that the disclosed information

does not "*readily permit* an ordinary person to identify a specific person's video-watching behavior". *In re Nickelodeon*, 827 F.3d at 267. For these reasons, Plaintiff fails to state a claim under the VPPA and it should be dismissed.

### III. Plaintiff's allegations fail to establish the requirements to contravene the VPPA's statute of limitations.

Despite affirmatively alleging that the statute of limitations should be tolled or estopped, Plaintiff now contends that her allegations are exempt from scrutiny at this stage.[2] Plaintiff instead argues that consideration of her conclusory, self-serving allegations must be deferred until class certification. Opp. at 14-15. But the cases she cites for this proposition are inapposite because, unlike here, the plaintiffs in those cases did not affirmatively allege equitable tolling or estoppel. For example, in *Saint-Armour v. Richmond Org., Inc*., 388 F. Supp. 3d 277 (S.D.N.Y. 2019), the complaint itself made no mention of equitable tolling or estoppel; rather, the defendant raised the issue on its own accord in the motion to dismiss. *See id.* at ECF. No. 6; ECF No. 18 pp. 24-25. The same is true for *Payday Advance Plus, Inc. v. Findwhat.com, Inc*., 478 F. Supp. 2d 496 (S.D.N.Y. 2007), where the statute of limitations was raised as a defense, not in the complaint. *See* Case No. 06-cv-1923 at ECF No. 1, 6. And the quoted language from *Townsend v. Haza Foods, LLC*, No. 6:24-CV-06180, 2024 WL 4592282 (W.D.N.Y. Oct. 28, 2024), was addressing the defendant's motion to dismiss or strike the complaint's class allegations altogether; there is no mention of equitable tolling or estoppel in that case at all.

The cases cited by Becker, on the other hand, clearly state that where a plaintiff affirmatively pleads equitable tolling or estoppel, those allegations are appropriately considered

[2] Plaintiff Jones alleges disclosure in violation of the VPPA occurred as recent as January 2024. Assuming this is true for purposes of this Motion only, Becker does not contend *that* particular claim is barred by the VPPA's 2-year statute of limitations. But, it is unclear from the Complaint whether Plaintiff Jones is also claiming violations dating more than 2 years prior.

on a motion to dismiss. *Alvi v. Aqua at Lakeshore East LLC*, No. 12 CV 2662, 2013 WL 3785622, at *5 (E.D.N.Y. July 18, 2013) ("Because the purported misrepresentations and omissions are also alleged in the Complaint … it is appropriate to consider plaintiff's equitable tolling argument in the context of a motion to dismiss."); *Miller v. Potter*, No. 07-CV-1767, 2007 WL 4615611, at *3 n.5 (E.D.N.Y. Nov. 29, 2007) (noting the court may consider equitable tolling at motion to dismiss stage because "plaintiff included his basis for equitable tolling in the complaint"); *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 266 (S.D.N.Y. 2006) (holding equitable estoppel is properly resolved on a motion to dismiss where "plaintiff fails to adequately plead the requisite facts in support").

Plaintiff, not Becker, must establish the requirements of equitable tolling or estoppel, *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), which is a "drastic remedy applicable only in rare and exceptional circumstances.'" *Contrera v. Langer*, 278 F. Supp. 3d 702, 723 (S.D.N.Y. 2017) (quoting *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011)). Plaintiff's vague, conclusory allegations fail to carry her burden.

First, the allegations are plainly refuted by Becker's Cookie and Privacy Policies, which specifically list and disclose that (1) Becker uses various cookies including for Facebook, and (2) that Becker "collect[s] various types of personal information when you use our site and choose to engage with us," and shares such information with third-party "marketing services providers." Further, it is no secret that internet activity is routinely tracked and shared. *In re Nickelodeon*, 827 F.3d at 266 ("Most of us understand that what we do on the Internet is not completely private…. We recognize, even if only intuitively, that our data has to be going somewhere. And indeed it does, feeding an entire system of trackers, cookies, and algorithms designed to capture and monetize the information we generate…. [T]he data-collecting infrastructure of the digital world

hums along quietly in the background"); *State v. Mixton*, 478 P.3d 1227, 1238 (Ariz. 2021) ("Our 'ubiquitous and pervasive internet use' that is 'internet-connected, cloud-dependent, and app-reliant for personal communications, all manner of commercial transactions, 24-7 entertainment, and universal positional tracking,' makes it hard to believe that anyone still retains 'this largely antiquated notion' of 'anonymity in their internet use.'") (citation omitted). Thus, these are not the rare or "extraordinary circumstances" warranting equitable tolling[3] because it certainly was not "*impossible* for a reasonably prudent person to learn" about the Pixel or her cause of action. *Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002) (emphasis in original).

Plaintiff nevertheless claims—despite the disclosures in the Cookie and Privacy Policies that she agreed to and the judicially-recognized principle that internet activity is frequently tracked—that she nor any class member could have discovered the Pixel's use. But she fails to plead any form of diligence on her part. *Pace*, 544 U.S. at 418 ("[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way."). Plaintiff's bare allegation that diligence would have been futile is not only refuted by Becker's policies, but also legally insufficient. *See Fire & Police Ass'n of Colorado v. Bank of Montreal*, 368 F. Supp. 3d 681, 703-04 (S.D.N.Y. 2019) ("Due diligence is not adequately pled if plaintiffs 'did not allege in the [complaint] that they exercised due diligence' or if they 'make no allegation of any specific inquiries of [defendants], [or] detail when such inquiries were made, to whom, regarding what, and with what response.'") (quoting *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d

[3] Examples of such circumstances include "where a plaintiff's mental or physical disability prevented him from handling his legal affairs," *Lopez v. Nassau Cnty. Sheriffs Dep't*, No. 17-CV-3722, 2018 WL 3321430, at *5 (E.D.N.Y. July 5, 2018); a corrections officer's intentional confiscation of a prisoner's petition shortly before the filing deadline, *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000); or an attorney's refusal to follow the client's explicit instructions to file a petition, *Baldayaque v. United States*, 338 F.3d 145, 150–53 (2d Cir. 2003). Nothing similar is alleged here.

499, 521 (S.D.N.Y. 2009)). The *Fire & Police Association* court dismissed a claim based on allegations virtually identical to Plaintiff's. *Id.*

Plaintiff's claim of fraudulent concealment falls far short of Rule 9(b)'s requirement that each of the elements be pled with particularity. Specifically, the Complaint's generalized allegations do not state the who, what, when, where, and how of the alleged concealment. *Schneider v. Colgate-Palmolive Co.*, 677 F. Supp. 3d 91, 101 (N.D.N.Y. 2023) ("Pleading fraud with particularity means specifying the 'who, what, when, where, and how [of the fraud].'") (brackets in original) (quoting *Reynolds-Sitzer v. EISAI, Inc.*, 586 F. Supp. 3d 123, 135 (N.D.N.Y. 2022)). *See also De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 319 (S.D.N.Y. 2013) ("Generalized or conclusory allegations of fraudulent concealment are not sufficient to toll a statute of limitations."); *Futterman v. Wash. Mut. Bank, FA*, No. 1:10-CV-01002, 2010 WL 5067650, at *2 (N.D.N.Y. Dec. 6, 2010) ("The Court finds that the equitable tolling standard has not been satisfied. Plaintiff has made only broad allegations, void of any specific factual references, that 'Defendants actively concealed the complete truth from Plaintiff with the intent of defrauding Plaintiff.'"). Indeed, the Complaint fails to identify *any* step taken by Becker to "conceal" the Pixel's use at all, let alone the necessary details of the concealment.

"Whether referred to as 'equitable tolling,' or 'equitable estoppel,' tolling is applied only in rare circumstances when the defendant's fraudulent conduct either conceals the existence of a cause of action or acts to delay Plaintiff from commencing a lawsuit." *Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 647 (E.D.N.Y. 2012) (internal citations omitted). The Complaint's conclusory allegations that Plaintiff lacked knowledge of the Pixel do not support application of either doctrine.

## **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: April 3, 2025

By: */s/Paul Croker*
HURWITZ FINE, P.C.
Andrea Schillaci
424 Main Street, Suit 1300
Buffalo, New York 14202
Telephone: 716.849.8900
Fax: 716.855.0874
AS@hurwitzfine.com

ARMSTRONG TEASDALE LLP
Paul Croker (*admitted pro hac vice*)
Nick Slovikoski (*admitted pro hac vice*)
2345 Grand Blvd., Suite 1500
Kansas City, Missouri 64108
Telephone: 816.221.3420
Fax: 816.221.0786
pcroker@atllp.com
nslovikoski@atllp.com

*Counsel for Defendant Becker Professional Development Corporation d/b/a Becker Professional Education*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 3, 2025, the foregoing was filed electronically using the Court's CM/ECF system which will serve a copy upon all parties of record.

/s/ *Paul Croker*
*Counsel for Defendant*