**Paul Croker**
Direct **T** 816.472.3116 **F** 816.221.0786
pcroker@atllp.com

May 27, 2025

Hon. Meredith A. Vacca
United States District Judge
Kenneth B. Keating Federal Building
100 State Street
Rochester, New York 14614

**Re:** ***Jones v. Becker Professional Development Corporation*; Case No. 6:24-cv-06643-EAW; Defendant's Request for Leave to File Supplemental Authority**

Judge Vacca,

Defendant Becker Professional Development Corporation filed its Motion to Dismiss Plaintiff's Complaint [Dkt. 16] on January 22, 2025, and its Reply on April 3, 2025 [Dkt. 27].

In both its Memorandum in Support [Dkt. 17] and the Reply, Defendant explained that an ordinary person could not decipher Personally Identifiable Information (PII) within the muddle of computer code that is purportedly transmitted by the Pixel, as demonstrated by screenshots in the Complaint. *See* Dkt. 17 at 8-11; Dkt. 27 at 4-6.

In doing so, Defendant explained that the "ordinary person" standard for defining PII – while not yet adopted by the Second Circuit at the time – is the leading standard adopted by the majority of courts to address the issue. The Second Circuit on May 1, 2025 joined two other circuit courts of appeal and many district courts in adopting this standard, too.

In *Solomon v. Flipps Media, Inc*., 136 F.4th 41 (2d Cir. 2025) the Second Circuit analyzed the VPPA and various authorities supporting both standards, concluding "we adopt the Third and Ninth Circuits' ordinary person standard" including because "[i]t does not make sense that a video tape service provider's liability would turn on circumstances outside of its control and the level of sophistication of the third party." *Id.* at 51-52. A copy of the opinion is enclosed as Exhibit 1.

The Second Circuit went on to apply this standard and held that the Pixel's transmission of computer code containing purported PII (including a Facebook ID) embedded within it does not violate the VPPA:

> Turning to the facts of this case, we consider whether the Complaint plausibly alleges that FITE's disclosure of Solomon's FID and video titles "would, with little or no extra effort, permit an ordinary recipient to identify [Solomon's] video-watching habits." *In re Nickelodeon*, 827 F.3d at 284. We conclude it does not.
>
> The information transmitted by FITE to Facebook via the Pixel's PageView is set forth in the "exemplar screenshot" reproduced in the Complaint. See page —— supra; Joint App'x at 20. **The exemplar depicts some twenty-nine lines of computer code, and the video**

> **title is indeed contained in Box A following the GET request. The words of the title, however, are interspersed with many characters, numbers, and letters. It is implausible that an ordinary person would look at the phrase "title% 22% 3A% 22-% E2% 96% B7% 20The% 20Roast% 20of% - 20Ric% 20Flair" -- particularly if the highlighting in Box A is removed -- and understand it to be a video title. It is also implausible that an ordinary person would understand, "with little or no extra effort," the highlighted portion to be a video title as opposed to any of the other combinations of words within the code, such as, for example, "% 9C% 93% 20In% 20the% 20last% 20weekend% 20of% 20-July% 2C**." *Id*.; Joint App'x at 20.
>
> Nor does the Complaint plausibly allege that an ordinary person could identify Solomon through her FID. Because the redacted sequence of numbers in the second line of Box B is not labeled, the FID would be just one phrase embedded in many other lines of code. And if the numbers in the exemplar were not redacted, what an individual would see is, for example, a phrase such as "c_user=123456" or "c_user=00000000." **Although a section of the code in Box A does state "[h]ost: www.facebook.com," it is not plausible that an ordinary person, without the annotation of Box B, would see the "c_user" phrase on FITE's servers and conclude that the phrase was a person's FID.**
>
> **Notably, the Complaint lacks any details about how an ordinary person might access the information on the Pixel's PageView**. But even assuming, arguendo, that an ordinary person could somehow gain access to the Pixel's PageView, the Complaint is also devoid of any details about how an ordinary person would use an FID to identify Solomon. The Complaint merely states that entering "facebook.com/[Solomon's FID]" into any web browser would result in Solomon's personal Facebook profile, and that "[t]his basic method of accessing a person's Facebook profile is generally and widely known among the public." Joint App'x at 21. *But see In re Nickelodeon*, 827 F.3d at 283 ("To an average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person."). Accordingly, **we are not persuaded that an FID is "vastly different,"** Appellant Br. at 29, **from the unique device identifiers in *Nickelodeon*, 827 F.3d at 262, or the Roku device serial numbers in *Eichenberger*, 876 F.3d at 979.**

136 F.4th at 54-55 (emphasis added). The Second Circuit's binding analysis and holding is highly relevant because the same arguments are made in Defendant's Motion to Dismiss, and Defendant believes *Solomon* to be dispositive of Plaintiff's claim.

Defendant respectfully requests leave to file supplemental authority and/or additional briefing in support of its Motion to Dismiss on this basis in light of the Second Circuit's opinion.

Sincerely,



Paul Croker

PC:nds